NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4279

_____

UNITED STATES OF AMERICA,

v.

MONROE HAWKINS,

Appellant.

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cr-00025-1)
District Judge: Honorable William W. Caldwell

_____

Submitted Under Third Circuit LAR 34.1(a)
December 11, 2007

Before: RENDELL and STAPLETON, Circuit Judges,
and IRENAS,* Senior District Judge.

(Filed: February 27, 2008)

_____

OPINION OF THE COURT

_____

_____

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

IRENAS, *Senior United States District Judge.*

A jury found Appellant, Monroe Hawkins, guilty of four counts of drug-related offenses. Hawkins appeals the District Court's Judgment of Conviction and Sentence, under which Hawkins received twenty years imprisonment for two counts, and terms of forty-eight and sixty months for the remaining counts, to run concurrently. Hawkins contends that: (1) the verdict is against the weight of the evidence; (2) the jury charge was misleading; (3) the District Court erred in evidentiary rulings during trial; (4) the District Court erred in treating the sentencing guidelines as mandatory; and (5) the District Court erred in giving Hawkins a leadership role enhancement at sentencing. We will affirm.

## I.

Because we write only for the parties, who are familiar with the factual context and procedural history of the case, we set forth only those facts necessary to our analysis. A four-day jury trial was held on the allegations in the Superseding Indictment, which charged Hawkins with: unlawful distribution and possession with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count One); unlawful use of a communication facility to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b) (Count Three); interstate travel in aid of drug trafficking in violation of 18 U.S.C. § 1952(a)(3) (Count Four); and criminal conspiracy to distribute

five kilograms or more of cocaine (Count Six).[1]  A jury found Hawkins guilty of these four counts, and determined that the quantity of cocaine involved under Counts One and Six was five kilograms or more.

The Pre-Sentence Investigation Report was prepared, which determined that the amount of cocaine involved was at least fifty kilograms but fewer than 150 kilograms, resulting in a base offense level of thirty-six.  The report further calculated a four-level increase for an organizer or leader role under United States Sentencing Guideline section 3B1.1(a), making the offense a level forty.  Because Hawkins had a criminal history category of three, the Report concluded that the range of imprisonment under the Guidelines was from 360 months to life.

At sentencing, District Court Judge Caldwell, upon the recommendation of the government, adjusted the drug quantity to a level involving five to fifteen kilograms of cocaine, and reduced the criminal history category from three to two.  Those changes resulted in a guideline range of 210 to 262 months. Judge Caldwell, however, noted that the recalculations were "academic" because the United States had filed an Information that would require the Court to impose a mandatory minimum statutory term of imprisonment of 240 months, or twenty years, pursuant to 21 U.S.C. § 841(b)(1)(A)

---

[1]  Counts Two and Five were directed at co-defendant, Maurice Young, individually. Count Seven, in which the government sought forfeiture of $333,000.00, was dismissed at the government's request.

3

("§ 841").[2]  The Court sentenced Hawkins to twenty years imprisonment for Counts One and Six, and forty-eight and sixty months for Counts Three and Four, respectively.  Judge Caldwell ordered that the sentences be served concurrently.

Hawkins then filed a motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel due to his attorney's failure to appeal the judgment of conviction and sentence.  The § 2255 motion was granted, and a timely appeal followed.[3]

## II.

Hawkins contends that the verdict is against the weight of the evidence.  "When a defendant challenges the sufficiency of the evidence supporting a verdict, we must review the evidence in the light most favorable to the government."  *See United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) (noting that the appellant "bears a heavy burden, for we must uphold his conviction if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.") (*citing United States v. McGlory*, 968 F.2d 309, 321 (3d Cir. 1992)).  "It is not for us to weigh the evidence or to determine

---

[2]  Section 841 requires that the Court sentence any person who knowingly or intentionally distributes five kilograms or more of cocaine to a minimum ten year term of imprisonment.  However, it provides the caveat that, "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment . . . If any person commits a violation . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment[.]" 21 U.S.C. § 841.

[3]  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

4

the credibility of the witnesses." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (citation omitted). A court must sustain the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

First, Hawkins argues that the evidence presented at trial is insufficient to prove beyond a reasonable doubt that he distributed five kilograms or more of cocaine. This argument is based upon the purportedly inconsistent testimony and bias of government witnesses due to deals they made with the government in exchange for their testimony.

The credibility of witnesses, however, is a determination exclusively within the province of the jury. "It is not for us to weigh the evidence or to determine the credibility of the witnesses." *Voigt*, 89 F.3d at 1080. Indeed, the District Court cautioned that the jury could consider the fact that some witnesses were accomplices, made plea agreements with the government, and provided testimony in exchange for immunity. Judge Caldwell told the jury that when they decide whether or not to accept testimony of such witnesses, the testimony should be "scrutinized with great care and viewed with particular caution."

Despite this cautionary advice, the jury found at least some of the testimony credible. After reviewing the record, it is clear that even if the jury only relied upon some of the testimony provided, particularly that of Christian Bennett, it would be enough to convict Hawkins of distributing five or more kilograms of cocaine. The evidence, when viewed in the light most favorable to the government, is sufficient for any reasonable juror to find the essential elements of the crime – that Hawkins distributed five kilograms

or more of cocaine – beyond a reasonable doubt.

Next, Hawkins contends that the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of involvement in a conspiracy to distribute cocaine. To prove the existence of a conspiracy, the government is required to establish a unity of purpose among the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal. *See Gibbs,* 190 F.3d at 197. "The court must determine whether all the pieces of evidence, taken together, make a strong enough case to let a jury find [the defendant] guilty beyond a reasonable doubt." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005) (quotations omitted) (alteration in original).

If found credible, the testimony of Bennett alone would be sufficient for a jury to find beyond a reasonable doubt that Hawkins engaged in a criminal conspiracy to distribute cocaine. Bennett testified that he inquired to Hawkins about making drug runs and soon thereafter traveled with Hawkins, and then on his own, to New York City. He testified that he traveled with Hawkins's money, purchased cocaine, and brought it back to Harrisburg for distribution. Hawkins paid Bennett for these services. This testimony reveals that Bennett and Hawkins worked in unison to achieve a common goal of obtaining cocaine for distribution in Harrisburg.

Hawkins admits that the evidence establishes that he used two individuals, Rosenburger and Bennet, to obtain cocaine from New York, which he would distribute to a dealer, Heim. He also concedes that the evidence establishes that he and Heim may

6

have secured cocaine from the same source in New York, but argues that Heim was involved in his own cocaine conspiracy with a man named Maneri. While this may be true, "[t]o sustain a conspiracy conviction, the contention that the evidence also permits a less sinister conclusion is immaterial. . . . The evidence need not be inconsistent with every conclusion save that of guilt." *Brodie*, 403 F.3d at 134 (citations and quotations omitted).

While the evidence might support an inference that Hawkins was simply working side-by-side with other individuals in procuring and distributing drugs, in viewing the testimony in the light most favorable to the government, a rational juror could find beyond a reasonable doubt that Hawkins conspired with other individuals, and Bennett in particular, in purchasing cocaine for distribution.

We will also uphold the jury verdict finding that Hawkins traveled in interstate commerce in aid of cocaine trafficking. Contrary to Hawkins's assertion that a pattern of interstate travel is required, Bennett's testimony that he traveled from Pennsylvania to New York on one occasion establishes a violation of 18 U.S.C. § 1952. Bennett testified that he traveled to New York with Hawkins so that Hawkins could introduce him to the source of the cocaine supply. He stated that Hawkins advised him on avoiding detection when bringing money to the source of supply, and returning to Harrisburg with cocaine. Witness Rosenberger also testified that he was an interstate drug runner for Hawkins. That the jury found this testimony credible, and did not believe Hawkins's testimony to

7

the contrary, is not grounds for this Court to overturn the verdict.

### III.

In answering the jury's question as to what constitutes distribution or possession of cocaine, the District Court first provided an example illustrating the difference between the two charges, and then explained to the jury what they could find based upon the outcome of their fact finding.[4]

------------------------------------

[4]  Judge Caldwell stated as follows:

"We've received your message, folks. Your question or your statement is: We, the jury, need to have the charge of distribution or possession explained again. . . .

When the government charges - - now I'm not talking about this case, I'm talking generally. When the government charges someone in a drug case, they charge them in this language that's pretty legalese, and when I explain to you the elements of the offense, I guess I explain that in language that we're used to working with all the time which may be somewhat new to you. So what I'm going to try to do is explain it in simple everyday language, and hopefully if I make any errors in what I say, it will be called to my attention.

The government has charged the defendant with distributing cocaine and/or being in possession of cocaine with intent to deliver. That's just the language. I think in this case the proof, if you accept it, relates more to distribution than it does to possession with intent to distribute.

If I'm stopped in my car and I have a $20 bag of cocaine, I'm probably going to get charged with possession. If I get stopped in a car with 5 kilograms of cocaine, I'm going to get charged with possession of cocaine with intent to deliver because you can draw the inference that the small quantity is for personal use and 5 kilograms is possession with the intent to deliver, and you infer the intent from the circumstances, the quantity of the drugs just says to most people, 'Well, that's not for personal use.' So they're the difference in the two forms of possession.

If you believe the government's case or if you accept it in this case, I guess at one time or another you could say the defendant was in possession, either constructive or actual, of cocaine with the intent to deliver. You could also, if you accept the government's case, determine that he distributed or was responsible for distributing quantities of cocaine to be determined. So it just depends on how far your fact finding has gotten as to whether any of those things apply. . . .

Hawkins argues that the District Court's explanation impermissibly "constituted a mandatory presumption by directly foreclosing independent jury consideration of whether the facts proved established certain elements of the offense with which [he] was charged." *United States v. Korey,* 472 F.3d 89 (3d Cir. 2007) (citation and quotations omitted).

We review the trial court's expression in charging the jury for abuse of discretion. *See United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995). We find that the District Court's response did not take away the jury's function of finding each element beyond a reasonable doubt. Rather, it explained, in context, what the jurors could find *if* they believed the evidence presented at trial. When viewed in light of the evidence presented at trial, "the charge as a whole fairly and adequately submit[ted] the issues in the case to the jury." *Zehrbach,* 47 F.3d at 1264.

**IV**.

Next we turn to Hawkins's contentions regarding the purportedly erroneous evidentiary rulings. Hawkins appeals the District Court's admission of (1) an audiotaped conversation and (2) a witness's summary of that conversation for the jury prior to

---

(A discussion was held off the record at side bar)
In no way in my remarks did I intend to emphasize the government's case or anything else. I'm really not talking about the government's case. I'm just using the phrase if you believe, you can find. So, you know, in my mind I'm not on the jury, and I'm not attempting to indicate in any way what your fact finding function should result in. I'm just trying to use illustrations and language that might simplify this whole thing for you. So hopefully that will enable you to continue your deliberations. You may retire.

playing the tape.  Testimony regarding the tape was first given in response to a question

posed by Hawkins's counsel, Thornton, on cross-examination.  Tillman, a Narcotics agent

for the Pennsylvania Office of the Attorney General, Bureau of Narcotics Investigation

and Drug Control, was called as a government witness, and was cross-examined by

Thornton about his investigation of Hawkins.  The questioning went as follows:

> Thornton:  And in fact throughout this investigation, even to the very end,
> you were never able to have anyone actually receive any cocaine from Mr.
> Hawkins, were you?
> Tillman:  There were people that received cocaine.
> Thornton:  No one that you saw, you didn't see any cocaine that came from
> Mr. Hawkins, you didn't send anybody to his house that brought out cocaine,
> you didn't videotape him, audiotape him selling cocaine, did you?
> Tillman:  There was an audiotape made of a drug transaction, potential drug
> transaction, with Mr. Hawkins that I'm aware of. . . .
> Thornton:  Now the audiotape that you just described, you said somebody
> tried, you had somebody call Mr. Hawkins and try to set up a cocaine buy
> from him.  Right?
> Tillman:  Actually I did not, the Drug Enforcement Administration did.
> Thornton:  Were any drugs ever delivered as a result of that conversation?
> Tillman:  No sir, they were not.

 On re-direct examination, the government followed-up on this line of questioning.

Behe, on behalf of the government, asked Tillman if he had listened to the tape to which

he referred.  Tillman stated that he listened to the tape and recognized one of the voices as

that of Hawkins.  Thornton then objected on the grounds that Tillman's testimony

violated the Best Evidence Rule, and constituted hearsay.  On the Court's prompting,

Thornton requested that the Court play the tape for the jury, which it did.  (Id. At 542-43).

First, however, the Court allowed Tillman to summarize the tape.

Hawkins now argues that his Best Evidence objection was fundamentally an objection to the authentication of the conversation.  Because, he argues, no foundation was given to determine whether the tape contained what Tillman said it contained, it should not have been admitted into evidence.  Furthermore, he states that he was prejudiced because he was unable to cross-examine the other person whose voice was purportedly on the tape.[5]

The record reveals, however, that Thornton never objected to the Court playing the tape during trial.  His only objection was to Tillman's summary of the contents of the tape.  Indeed, he requested that the court play the tape.  Thus, we review the District Court's admission of the tape for plain error because no objection to the admission was made below.  *See United States v. Jake*, 281 F.3d 123, 132 (3d Cir. 2002) ("A plain error is one which is clear or obvious . . .  In plain error cases, the defendant bears the burden of persuasion that a plain error has occurred." (internal citations and quotations omitted)).[6]

_____

[5] Hawkins also notes several times that the tape was inaudible.  However, he did not make any such objection during trial, and does not appear to include this as a basis of appeal.

[6] A court can grant relief under plain error review if: "(1) the District Court committed an 'error,' (2) the error is 'plain,' and (3) the error 'affect[s] substantial rights.'. . . An error is '[a] deviation from a legal rule.'. . . It is 'plain' when it is 'clear under current law.'. . . And, it 'affect[s] substantial rights' when it is 'prejudicial,' i.e., it 'affect[s] the outcome of the district court proceedings.' . . . Even if these requirements are satisfied, the court should only exercise discretion to grant relief 'in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006) (internal citations omitted) (alterations in original).

As noted by *Yohn v. Love*, 76 F.3d 508, 517 n.15 (3d Cir. 1996), "the issue of [a] tape's admissibility is left to the sound discretion of the trial judge, who is in the best position to 'determine the audibility of [a] tape and its trustworthiness as evidence.'" Defendant has not satisfied his burden of showing that a plain error occurred; he has cited no rule from which the District Court deviated, and has not shown that but for the error, the jury would not have found him guilty. Indeed, the evidence at trial of Hawkins's guilt was overwhelming. The decision to admit the tape was within the reasonable discretion of the District Court, and thus its decision was not plain error.

We review the decision to overrule the objection and allow Tillman to testify as to the contents of the tape for abuse of discretion. *See United States v. Serafini*, 233 F.3d 758, 768 (3d Cir. 2000). The District Court permitted Tillman to summarize the contents of the tape, and provided Hawkins with the opportunity to cross-examine Tillman on his testimony. Additionally, Hawkins himself testified to having the conversation on the tape, but offered the explanation that he did not use the word "brick," as Tillman stated, but rather said "ric," a purportedly short-hand version for discussing receivers and converters. When viewing the totality of the District Court's actions, its decision to allow Tillman to testify was not an abuse of discretion, particularly because it allowed the jury to hear the tape about which Tillman testified.

Finally, Hawkins argues that the District Court erred in restricting the cross-examination of Joseph Heim. He claims that when the District Court limited Heim's

12

testimony about his conspiracies with other individuals, the jurors were prevented from seeing that Heim was confusing the individuals with whom he was acting. We review the District Court's decision limiting Hawkins's ability to cross-examine a government witness for abuse of discretion. *See Serafini,* 233 F.3d at 768 n.14.

Hawkins was permitted to extensively cross-examine Heim about his drug trafficking activities with individuals other than Hawkins. Indeed, the Court acknowledged that Heim had multiple sources for cocaine. Although Hawkins contends that the District Court refused to allow counsel to inquire into the quantities of cocaine involved between Heim and Maneri, the record reveals that Heim testified that while he was dealing with Hawkins, he was also receiving approximately 4-1/2 to 9 ounces of cocaine per week from Mineri.

In sum, because the District Court permitted inquiry about other conspiracies, and Hawkins fails to elucidate upon the information he sought to obtain from Heim beyond his involvement with other individuals, we cannot say that the District Court abused its discretion in limiting cross-examination.

## V.

Lastly, Hawkins appeals the District Court's sentencing determinations. His appeal is primarily premised on his contention that the District Court committed

reversible error by treating the Sentencing Guidelines as mandatory.[7]  He argues that his Sixth Amendment rights were violated because the District Court did not state on the record that the Guidelines were advisory, and because the Pre-Sentence Report calculated his sentence and applied mandatory enhancements under the Sentencing Guidelines.[8] Because Hawkins's sentence was statutorily mandated, his *Booker* argument necessarily fails.

Hawkins's twenty-year term of imprisonment was the minimum sentence required under § 841 for any person who unlawfully distributes five kilograms or more of cocaine and has a prior conviction for a felony drug offense.  We have already held that the evidence supports the jury's finding beyond a reasonable doubt that Hawkins distributed five kilograms or more of cocaine.  Moreover, the United States filed an Information prior to trial, pursuant to 21 U.S.C. § 851, which advised Hawkins that the government would seek an enhancement sentence based upon his prior conviction if he were

---

[7]  *Booker v. United States,* 543 U.S. 220 (2005), was decided after Hawkins's sentence, but prior to his appeal.

[8]  Hawkins does not appeal the District Court's determinations that he was involved in the distribution of at least five kilograms of cocaine, or that he obstructed justice by taking the stand in his defense and committing perjury, even though he objected to these determinations at sentencing.  He does, however, appeal the District Court's denial of a right to a hearing under Federal Rule of Criminal Procedure 32 (i)(2) and (3)(b) based upon those objections.  He also appeals the Court's determination, over his objection, that an organizer or leader enhancement applied.  Finally, he argues that the evidence does not support a leader or organizer enhancement.  We have not considered these issues because our holding is not based upon a Guidelines determination, but rather upon our review of the District Court's imposition of the minimum sentence required by statute.

14

convicted.  Consequently, upon conviction, the District Court sentenced Hawkins to a

twenty-year term of imprisonment, as required by § 841.  Therefore, despite any

Guidelines determination, the District Court imposed the minimum sentence allowed

pursuant to statute, and its statutory determination was not clearly erroneous.

## VI.

For the reasons set forth above, the Order of the District Court dismissing the

Complaint will be AFFIRMED.

_____